**Margaret SPAULDING, et al., Plaintiffs-Appellants,**

v.

**UNIVERSITY OF WASHINGTON, Defendant-Appellee.**

**No. 80–3528.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1982.

Decided April 13, 1982.

---

1. Act of Sept. 13, 1960, § 3, 74 Stat. 912.

Karen J. Vanderlaan, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for plaintiffs-appellants.

John F. Aslin, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant-appellee.

Before SNEED, ANDERSON, and REIN-HARDT, Circuit Judges.

SNEED, Circuit Judge:

Appellants appeal the district court's order requiring them to pay for preparation of a transcript of proceedings before a magistrate in a suit alleging, *inter alia*, violation of Title VII of the Civil Rights Act of 1964. Appellants contend that the transcript was necessary to enable them to obtain the re-

view by the district court to which they are entitled.[1] We hold that under the facts present in this case the district court should have had a transcript prepared without cost to the parties. Having failed to receive a stay of the review proceedings before the district court, appellants in this case paid for preparation of the transcript and obtained de novo review by the district court. Appellants seek reimbursement of the cost to appellants of having the transcript prepared. Under the circumstances of this case we deny the relief sought.

## I.

### FACTUAL BACKGROUND

Members of the faculty of the University of Washington School of Nursing filed a class action alleging sex discrimination in employment in violation of Title VII, the Equal Pay Act, and 42 U.S.C. § 1983. The district court *sua sponte* referred the case to a United States magistrate sitting as a special master, pursuant to local Magistrate Rule MR5. This rule allows referral of Title VII cases without consent of the parties whenever the case cannot be scheduled for trial within 120 days, without regard to the usual requirement of Fed.R.Civ.P. 53(b) that referrals be made "only upon a showing that some exceptional condition requires it." Local Rule MR5 is based on section 706(f)(5) of Title VII, 42 U.S.C. § 2000e–5(f)(5), which allows appointment of a master pursuant to Rule 53 when Title VII cases have not been scheduled for trial "within one hundred and twenty days after issue has been joined." *See* 118 Cong.Rec. 7166, 7168 (1972).

The order of reference by the district court provided that it retained jurisdiction to review the magistrate's report and enter final judgment and provided that "no transcript of evidence need be filed with the report of the special master unless one or more of the parties arranges for the preparation and filing thereof."

---

1. We express no opinion on whether under the circumstances of this case this review should be de novo or under the clearly erroneous standard as provided in Rule 53(e)(2), Fed. R. Civ. P. Our holding is not dependent upon which of these standards is proper.

After a 15-day trial, the magistrate issued a report recommending dismissal under Fed.R.Civ.P. 41(b). A trial transcript, not having been obtained by any of the parties, did not accompany the report. The plaintiffs thereafter filed an emergency motion requesting that the magistrate file a trial transcript so that the plaintiffs could obtain de novo district court review of the magistrate's findings. The district court denied the motion, but certified the transcript issue for interlocutory appeal under 28 U.S.C. § 1292(b). This court granted permission to pursue the appeal.

## II.

### THE NECESSITY OF A TRANSCRIPT

■ It is settled law that the district court must undertake a proper review of the portion of a magistrate's findings to which a party objects. To accomplish this, the court may hold its own hearing on the objected-to portion, calling witnesses as appropriate, or may review a tape recording or transcript of the relevant portion of the proceedings before the magistrate. 28 U.S.C. § 636(b)(1); U.S.Const. art. III; *Moran v. Morris*, 665 F.2d 900, 901–02 (9th Cir. 1981); *McDonnell Douglas Corp. v. Commodore Business Machines*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Coolidge v. Schooner California*, 637 F.2d 1321, 1323, 1325–27 (9th Cir. 1981); *cert. denied*, 451 U.S. 1020, 101 S.Ct. 3011, 69 L.Ed.2d 392 (1981); *Orand v. United States*, 602 F.2d 207, 208–09 (9th Cir. 1979). *See also Livas v. Teledyne Movible Offshore, Inc.*, 607 F.2d 118, 119 (5th Cir. 1979); *Campbell v. United States District Court*, 501 F.2d 196, 206–07 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974).

■ It is, of course, within the district court's discretion to choose which of these means will afford the parties adequate review. Furthermore, the parties may agree to limit the scope of the district court's review or waive their right to review by use of these methods, recognizing that the scope of appellate review will be limited to issues subjected to proper review by the district court.

■ In this case, apparently the district court did not propose to hold a new hearing. No tape recording of the magistrate's proceedings was made, and the parties did not waive their right to have the district court review a transcript. Therefore, we conclude that in order to perform the required review of the objected-to findings of the magistrate, the district judge in this case must have a copy of the transcript of the proceedings before the magistrate.

■ In Title VII cases, which are referred to magistrates under local rules similar to MR5, the transcript should be provided by the district court. Article III of the United States Constitution vests the judicial power of the United States in Article III courts. The use of a magistrate cannot diminish any existing right of parties to a determination by an Article III judge. Because Title VII cases, unlike most other cases, can be referred to magistrates for trial without the consent of the parties, pursuant to 42 U.S.C. § 2000e–5(f)(5), to impose the cost of the transcript on Title VII litigants as a condition to obtaining review by an Article III judge improperly deprives these litigants of their rightful access to such judges.

■ The primary goal of Title VII is to eliminate discrimination in employment. Congress has evidenced an intent to make it easier for Title VII plaintiffs to litigate claims by authorizing an award of attorney's fees to prevailing Title VII plaintiffs. 42 U.S.C. § 2000e–5(k); *New York Gaslight Club Inc. v. Carey*, 447 U.S. 54, 63, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980). It would be inconsistent with this purpose to impose a unique financial burden on Title VII plaintiffs.

■ We conclude that in a Title VII case, where a transcript of proceedings before the magistrate is required, the transcript must be prepared by the district court at no expense to the parties.

■ Normally, objections to magistrate's findings must be filed within relatively

short periods of time. *E.g.*, 28 U.S.C. § 636(b)(1) (10 days). This time may be insufficient for the preparation and review by the parties of a transcript or tape recording before the deadline for filing objections. Under these circumstances it is necessary to accommodate in an appropriate fashion the deadline for filing objections with the delay that frequently may attend the preparation of a transcript or tape recording.[2]

### III.

### REIMBURSEMENT DENIED

■ As already indicated, the appellants have obtained at their expense a transcript which has been employed by the district court. Presently, the only relief to which they can assert they are entitled is reimbursement of the cost of the transcript.

This relief, however, is not available. It would be inappropriate and unjust to impose it upon the University of Washington against whom the plaintiffs brought their suit. The University has not been found to have injured appellants. Perhaps before this litigation is concluded the University may be found liable, but at present no court has found it guilty of a Title VII offense.[3] Its opposition to the appellants' motion for a stay provides no basis to impose the transcript cost upon it. Should appellants ultimately prevail the University of Washington would be liable to reimburse this cost along with other costs and attorney's fees. 42 U.S.C. § 2000e-5(k).

It also would be unjust to order reimbursement by the district court or court reporter. The court reporter, not the district court, received payment for the transcript that the appellants obtained. The district court was not unjustly enriched and the court reporter gave value for what he or she received. Had the district court ordered the transcript, as we have held it should have, the court reporter would have produced the transcript at no compensation beyond his or her salary. *See* 28 U.S.C. § 753(b) and (f); *Texas City Tort Claims v. United States*, 188 F.2d 900 (5th Cir. 1951). The failure of the district court to have done so was judicial error, but judicial error provides no basis for recovery against either the individual judge or the United States. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347–51, 20 L.Ed. 646 (1872).

Reimbursement of transcript costs must await the outcome of the appellants' suit.

REVERSED AS TO TRANSCRIPT RIGHT; AFFIRMED AS TO DENIAL OF REIMBURSEMENT.

J. BLAINE ANDERSON, Circuit Judge, concurring and dissenting:

I agree with Judge Sneed that, on this record, we should deny appellants the relief they seek in this interlocutory appeal. I do so for different reasons, set forth later in this statement.

I also agree with Judge Sneed's statement (p. 1235, supra) that it is "within the district court's discretion to choose which of these means will afford the parties adequate *de novo* review." As will appear later, that discretion was properly exercised in this case in the only way possible.

In Part II, page 1235 of Judge Sneed's opinion, he argues and concludes

---

2. Although the court in this case granted an extension of time for filing objections, it would be appropriate for a district court to require parties to file initial objections before a transcript or tape recording can be prepared and reviewed. After objections have been filed, the court and the parties may be able to agree on some limitation on the form or extent of review. Where objections are filed before a transcript or tape recording is available, the district court ordinarily should delay its review of the magistrate's findings until the parties have had

a chance to review and comment on the transcript or tape recording, unless the parties agree otherwise. Such a procedure protects the parties' right to review of the magistrate's findings while presenting the opportunity for the court and parties to formulate the most effective and efficient form of review.

3. Although the district court has made a decision adverse to the plaintiffs, an appeal from this decision has been taken.

that for Title VII plaintiffs (presumably all and without regard to any showing of need or indigency), the transcript must "be provided by the district court" since the failure to do so "improperly deprives these litigants of their rightful access to such judges." Respectfully, I cannot agree.

I must side with Judge Sneed in denying plaintiffs' reimbursement of transcript costs from the University of Washington at this juncture. Therefore, I respectfully disagree with Judge Reinhardt's reasons for now assessing costs against the University of Washington.

In my view, this court (panel) has been enticed into rendering what is, in effect, an advisory opinion. This interlocutory appeal under 28 U.S.C. § 1292(b) should have been denied. The district court did not properly certify the issue for interlocutory appeal. The district judge did not state "in writing in such [certification] order" that the issue sought to be certified involved a "controlling question of law as to which there is substantial ground for difference of opinion *and* that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ." (emphasis added). No such opinion or statement appears in the order nor elsewhere in the record available to us. District Judge's Order, December 10, 1980, ER 141. It is obvious to me (perhaps as it was to Judge McGovern) that there is no "controlling question of law" going to the merits of this litigation. Furthermore, the conjunctive requirement cannot be met. The mundane transcript cost issue presented to us cannot possibly "materially advance the ultimate termination of this litigation." That issue simply has nothing to do with the discrimination issues tried to the magistrate. It is wholly ordinary, collateral, and peripheral. This is nothing other than piecemeal review. The appeal should have been rejected out of hand.

My colleagues are quite properly concerned about access to Article III judges by Title VII plaintiffs. This is not an appropriate case for such concern. They (39 members of the School of Nursing faculty) have their transcript and they do have abundant access to Article III judges. No such right has been diminished by the magistrate nor anyone else. Paying for the transcript (as they did) did not deprive them of any right in this case.

I have no quarrel with the broad proposition that Congress intended to make it easier for Title VII plaintiffs to litigate their claims. However, that broad policy does not bridge the gap and provide the answer here. As discussed below, Congress has provided the means for ready access to the federal courts.

My colleagues do not mention, much more discuss, several matters not contradicted by any party to this appeal. First, 42 U.S.C. § 2000e–5(f)(1) provides in pertinent part:

> "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."

In brief, this is a specific provision permitting the attainment of *in forma pauperis* status in proper cases.

Moreover, the well-known and frequently used general statute, 28 U.S.C. § 1915, applies to "any court" in "any civil or criminal case" and was available to plaintiffs to achieve *in forma pauperis* status.

At no time in these proceedings have the plaintiffs made any effort to avail themselves of these beneficent provisions; in fact, in their brief, they reject these avenues for assistance.

Judge McGovern, in his order of December 10, 1980, found specifically, "[a] showing of indigency or need has not been attempted" by the plaintiffs and he proceeded to deny their motion to have a transcript prepared at government expense. Once again, I agree with Judge Sneed in his observation that it is "within the district court's discretion." The provisions in 42 U.S.C. § 2000e–5(f)(1) and 28 U.S.C. § 1915 are not self-executing. Nothing was brought to the attention of the district

court to invoke the exercise of his discretion. There was no discretion to abuse.

My conclusions are twofold. First, we should dismiss this appeal for failure to comply with the requisites for a § 1292(b) interlocutory appeal. Alternatively, I would affirm the district court since there was not, and could not be, any abuse of discretion. A district court, under these circumstances, at least, would have no power to *sua sponte* declare *in forma pauperis* status for these plaintiffs. The transcript costs are ordinary litigation costs and the award of costs, if any, should abide the final termination of this litigation on the merits. We should not undertake to "legislate" an expansion upon access to the federal courts already provided by Congress.

REINHARDT, Circuit Judge, concurring and dissenting:

I concur in Judge Sneed's opinion except insofar as it concludes that this is a case in which there is a wrong without a remedy. I agree that appellants are entitled to a free transcript of the proceedings before the magistrate and that their rights were violated when they were required to pay over $8,000 in order to obtain a review by an Article III judge. I do not believe, however, that we are powerless to correct this injustice.

It is true that appellants may ultimately recover the costs of the transcript if they prevail on the merits of their Title VII action. That, however, is not the issue before us. This is an interlocutory appeal relating solely to the transcript issue. Since appellants may well lose on the merits of the underlying litigation (and the district court has already ruled against them), the question is who pays for the transcript in that event. The majority says that appellants must bear the cost of the transcript they should not have been required to pay for. I disagree.

When the district court denied appellants' motion for a transcript, it provided in its order that unless appellants ordered the transcript by a particular date no additional time would be .allowed for the filing of objections to the magistrate's findings, conclusions, and order. However, the district court in that same order certified its denial of appellants' request for a free transcript for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We granted permission for the filing of that appeal. Appellants also filed an emergency motion requesting a stay of the proceedings before the district court pending our determination as to whether they were entitled to a free transcript, and a motion that the appeal be expedited. We denied their motions, leaving the appellants with no alternative but to pay for the transcript while waiting for our decision as to whether it should have been provided free.

Although the University of Washington did not oppose appellants' contentions, on interlocutory appeal, that they were entitled to a free transcript, the University vigorously opposed appellants' motion for a stay. The basis of the University's opposition to the stay request was that appellants would suffer no irreparable injury if we denied the stay. It is that very injury which my colleagues now say is irremediable.[1]

This court was persuaded to deny appellants' motion for a stay by the University's arguments that a remedy existed. The University took the position that appellants had the right to reimbursement if they pre-

---

[1] In saying that the injury is irreparable, I recognize that it is conceivable that appellants will ultimately prevail on the merits of the underlying litigation and will, in fact, recover the costs of the transcript from the University of Washington. Again, however, that is not the issue in this appeal. The question before us is what happens if appellants do not· prevail on the merits of the litigation. The majority opinion says, in effect, that in such case the loss will be irreparable since appellants will have no remedy available. While I recognize that Judge Sneed's statements do not constitute a holding that would bar appellants from subsequently filing a separate suit against the University of Washington for recovery of the costs on some theory or other, his statements clearly demonstrate that he would consider any such recovery "inappropriate and unjust." Judge Anderson joins him in this view. I do not.

vailed on the interlocutory appeal.[2] They have now prevailed. I agree with my colleagues that it would be unfair to ask the court reporter to return the monies previously paid them. The reporter received the payments in good faith and may well have expended them in the normal course of living. Nor should the district court be required to expend court funds simply because we have now determined that the ruling below was erroneous. The University should have known, at the time it made its representation that a remedy was available, that reimbursement could not be obtained from the court reporter or the district court. That left only the University itself as a possible source of reimbursement. Whether the University's representation was based on a misunderstanding of the law or simply on a failure to think the problem through, that representation, if it is to be given any reasonable meaning, was that the University would be legally responsible for the cost of the transcript if appellants prevailed in this interlocutory appeal.

In my opinion, the University is now estopped from contending that it is not liable for the cost of the transcript. Either the University or the appellants must bear the over $8,000 expense. That expense would not have been incurred had the stay been granted. Having persuaded the court not to issue the stay by arguing that the appellants would be entitled to recover the cost of the transcript if they prevailed on this interlocutory appeal, the University should not now be permitted to argue that it may not be assessed the cost.[3]

---

2. The University's position, as set forth in its brief, was as follows:

> If petitioners eventually prevail (either in this Court if it accepts this interlocutory appeal or on the merits of the case in chief), they can seek reimbursement in full for cost of the transcript. There is therefore no possibility of "irreparable harm" since their potential "harm" is a fully reimbursable litigation cost.

Response at 9.

There is no doubt as to what the University represented to this court, despite the awkward way in which it phrased its representations. Although in the first sentence the University literally said only that the appellants could "seek reimbursement," the second sentence says that "there is therefore no possibility of irreparable harm . . . ." Obviously, a right to seek reimbursement where no party or entity can be held liable would not eliminate the possibility of irreparable harm. The University's statements therefore constitute a representation that a source of reimbursement existed. Since that source is neither the court reporters nor the district court, it must be the University. There is also no question that the University represented that reimbursement would be available if appellants prevailed on this interlocutory appeal, i.e., if this court held, as we do, that appellants had a right to a free transcript. The University expressly stated that a remedy would be available if appellants prevailed either in "this interlocutory appeal" or on the merits of the underlying case.

3. That the motions panel of this court that denied appellants' request for a stay was aware of the irreparable injury issue and the University's representation when we acted is apparent from a reading of our orders. That we found

the University's statements of paramount significance is evident from the fact that we took the unusual step of reciting the statements in our order when we denied the stay. The first order we issued was as follows:

Before: SNEED and REINHARDT, Circuit Judges.

> Upon due consideration of petitioners' emergency motion and the opposition thereto, the court issues the following order:
>
> (a) petitioners' request for leave to appeal pursuant to 28 U.S.C. § 1292(b) and Fed.R. App.P. 5 is granted;
>
> (b) petitioners' request for a stay and/or injunctive relief pending appeal is denied;
>
> (c) petitioners' motion to expedite the appeal is denied; and
>
> (d) we note that the University of Washington made the following observation in its response to petitioners' emergency motion:
>
> > If petitioners eventually prevail (either in this Court if it accepts this interlocutory appeal or on the merits of the case in chief), they can seek reimbursement in full for the cost of the transcript. There is therefore no possibility of "irreparable harm" since their potential "harm" is a fully reimbursable litigation cost.
>
> Response at 9.

Subsequently, appellants moved for clarification of that order, out of what appeared to be an excess of caution, and asked us to make it clear that we were not merely saying that their remedy was the recovery of normal litigation costs if they prevailed on the underlying case. Appellants' concern resulted from the second sentence of the two sentence portion of the University's brief which we set forth in our order. There was reason for confusion if not for concern. The second sentence does two

It is not necessary, however, to find that this court actually relied on the University's representation in denying the stay. Whether we did or not, the University certainly urged us to do so and should be held to its material representations if they may have contributed to our decision. If the University was correct that appellants could recover the cost of the transcript upon prevailing on this interlocutory appeal, we were right in denying the stay. If, in fact, the University was incorrect in representing that there was a remedy available to appellants, then we erred in denying the stay. I believe that we were right to deny the stay because I believe that there is a remedy. That remedy is to hold the University to its representation.

I would order that the costs of providing the transcript be assessed against the University.

things which at first glance appear to be inconsistent. First, it says "There is therefore no irreparable harm," referring to its argument that appellants are entitled to reimbursement if they prevail on the interlocutory appeal. Later in the same sentence the University says there is no irreparable injury because the cost is recoverable as a "litigation cost." Appellants were concerned that "litigation costs" would be read in a narrow sense, meaning that they would be recoverable only if appellants prevailed in the underlying litigation. That construction, however, is not possible when the two sentences are read together. Attributing such a limited meaning to litigation costs would conflict directly with the University's statements in the immediately preceding sentence. Therefore, that term can only be read reasonably to mean that appellants would be entitled to recover those costs if they prevailed either on the interlocutory appeal or on the case in chief.

In response to the appellants' motion for clarification we issued the following order a week after our first:

Before: SNEED and REINHARDT, Circuit Judges.

Upon due consideration of petitioners' emergency motion for clarification and reconsideration of this court's order of December 24, 1980, the court issues the following order:

(a) The inclusion in our order of the University's statement regarding petitioners' right to obtain reimbursement in full of the cost of the transcript as a "litigation cost" under certain circumstances is not intended to limit petitioners' rights to seek such other relief which might otherwise be appropriate; and

(b) the motion for reconsideration is denied.

While I do not think it necessary to base the assessment of transcript costs against the University on actual reliance by this court on the University's representations, I think a review of the orders we issued demonstrates that there was, in fact, actual reliance in this case.